United States District Court

Eastern District of California

Michael J. Brodheim,

      Plaintiff,                No. Civ. S 02-0573 FCD PAN P

   vs.                        Findings and Recommendations

Michael Cry, et al.,

      Defendants.

-oOo-

    Plaintiff is a state prisoner seeking injunctive relief pursuant to 42 U.S.C. § 1983.  Defendants Cry, Valadez, Ramirez-Palmer, Rianda, Loftin, Belancik and Moreno move to dismiss arguing that plaintiff fails to state a claim for relief, plaintiff lacks standing to seek prospective injunctive relief, and that claims against Cry in plaintiff's supplemental complaint based on events in 2003 are not exhausted.

Summary of Plaintiff's Pleading

    In his third-amended complaint plaintiff alleges that on

1   June 18, 2001, Cry rejected plaintiff's administrative grievance.

2   June 20, 2001, plaintiff returned the grievance and rejection

3   notice with an "Inmate Request for Interview," voicing his

4   objections to Cry's rationale in rejecting the grievance.   June

5   21, 2001, Cry responded in writing, stating "I'd also like to

6   warn you to be careful what you write, request on this form."

7        Plaintiff filed a complaint against Cry (# CMF-M-01-0938),

8   claiming Cry's warning violated plaintiff's First Amendment right

9   to pursue a prison grievance.   July 23, 2001, Warden Ramirez-

10  Palmer denied plaintiff's appeal (#CMF-M-01-0938) at the second

11  level of review.   Valadez signed the response on Ramirez-Palmer's

12  behalf, concluding that plaintiff had submitted his appeal "as a

13  form of retaliation against CC II Cry" and that Cry had acted

14  "within the scope of his duties as the Appeals Coordinator."

15  Plaintiff sought director's-level review, claiming Cry's

16  "warning" and Cry's comment to plaintiff that he filed "too many

17  appeals" chilled plaintiff's First Amendment right to file a

18  grievance and the warden's response added to the chilling effect.

19  The appeal was denied at the director's level November 20, 2001,

20  by Loftin, signing for Rianda, as "unsubstantiated."

21       February 15, 2002, an inmate told plaintiff that Cry asked

22  him whether plaintiff had submitted a grievance on behalf of a

23  disabled inmate.   Plaintiff wanted to complain, viz., file a

24  grievance, based on Cry's inquiry, but did not because of Cry's

25  prior warning, as endorsed by the warden.

26       October 8, 2001, the warden granted plaintiff's appeal (#

1  CMF-M-01-0783) seeking copies of documents from plaintiff's

2  central file.  Cry issued a "Modification Order" October 11,

3  2001, stating plaintiff would "be afforded an Olsen review in

4  order to review non-exempt documents he tag[]s."  Plaintiff

5  reviewed his file October 24, 2001, and tagged documents he

6  wished copied.  His counselor, Belancik, was upset at the

7  inconvenience of making the copies but said he would do so within

8  a day or two.  Instead, Belancik conspired with Moreno to

9  retaliate against plaintiff for filing grievance # CMF-M-01-0783

10  and refusing to modify the terms of the granted appeal.  October

11  25, 2001, Belancik and Moreno told plaintiff they would charge

12  plaintiff the cost of paying staff overtime required to make the

13  requested copies, and therefore had put a "hold" on the $200

14  balance in plaintiff's inmate trust account.  Moreno threatened

15  plaintiff that if he did not reduce the number of copies

16  requested he would "see to it" plaintiff was transferred from

17  CMF.  Plaintiff filed a grievance against Moreno and Belancik

18  claiming retaliation (# CMF-M-01-1553).

19     October 29, 2001, Belancik placed a "copies hold" on the

20  $198.40 balance in plaintiff's inmate trust account.  November

21  26, 2001, Belancik told plaintiff he had cleared the "hold" and

22  assessed $60.20 for the cost of making 602 photocopies at ten

23  cents per page.  December 3, 2001, the warden denied grievance #

24  CMF-M-01-1553, finding "no violation" on the part of Belancik and

25  Moreno.  Plaintiff's appeal to the director's level was denied

26  February 20, 2002, by Loftin signing on behalf of Rianda.  This

1  course of events chilled plaintiff's subsequent exercise of his
2  First Amendment rights.

3      Subsequent to the filing of the complaint Cry has denied two
4  of plaintiff's grievances without a legitimate basis.  November
5  22, 2003, plaintiff filed a grievance claiming Cry was
6  retaliating against him for this litigation.  Cry rejected the
7  grievance.

8      January 20, 2004, Ramirez-Palmer's successor, Warden Teresa
9  Schwartz, sent plaintiff a memorandum and a copy of it to
10 Ramirez-Palmer, stating that plaintiff's efforts to petition the
11 government by writing letters to a state assemblywoman and others
12 had "unfortunate[ly]" wasted valuable staff time and energy.

13     For relief, plaintiff requests the court enjoin defendants
14 and their successors in office from retaliating against him for
15 filing administrative grievances and otherwise exercising his
16 First Amendment right to petition the government for redress of
17 grievances.  Plaintiff also seeks an injunction based on his
18 supplemental state law claim under California Civil Code § 52.1.

19     Plaintiff's supplemental complaint alleges that on June 18,
20 2004, Correctional Counselor Prebula, who supervises other
21 Correctional Counselors, including Cry, asked plaintiff if he had
22 been "going a little crazy filing 602's lately."  Plaintiff asked
23 Prebula why he asked the question and Prebula responded, "Well, I
24 don't care, but I just heard something.  You know how things go
25 around here."  Prebula's comments were triggered by a discussion
26 with Cry, and plaintiff would like to grieve this issue but does

1 | not because he is mindful of Cry's warning.

2 | Governing Legal Standard

3 |     On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),
4 | the court must accept plaintiff's allegations as true, read the
5 | complaint most favorably to plaintiff, give plaintiff the benefit
6 | of every reasonable inference that appears from the pleading and
7 | argument of the case and dismiss the complaint only if it is
8 | clear that no relief could be granted under any set of facts that
9 | could be proved consistent with the allegations.  Wheeldin v.
10 | Wheeler, 373 U.S. 647, 658 (1963); Retail Clerks International
11 | Association, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746,
12 | 754 n.6 (1963); Hishon v. King & Spalding, 467 U.S. 69, 73
13 | (1984).  The court may consider documents attached to the
14 | complaint in evaluating a motion to dismiss.  Parks School of
15 | Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

16 | Analysis

17 |     Plaintiff claims Cry, Belancik and Moreno retaliated against
18 | him for exercising his First Amendment rights.  "Within the
19 | prison context, a viable claim of First Amendment retaliation
20 | entails five elements: (1) An assertion that a state actor took
21 | some adverse action against an inmate (2) because of (3) that
22 | prisoner's protected conduct, and that such action (4) chilled
23 | the inmate's exercise of his First Amendment rights, and (5) the
24 | action did not reasonably advance a legitimate correctional
25 | goal."  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005)
26 | (citations omitted).  In assessing the fourth requirement, the

1    court at the pleading stage should ask "'whether an official's

2    acts would chill <u>or</u> silence a person of ordinary firmness from

3    future First Amendment activities.'" <u>Id.</u> at 568, <u>quoting</u>

4    <u>Mendocino Environmental Center v. Mendocino County</u>, 192 F.3d

5    1283, 1300 (9th Cir. 1999).  "The 'government' to which the First

6    Amendment guarantees a right of redress of grievances includes

7    prison authorities, as it includes other administrative arms and

8    units of government." <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th

9    Cir. 1995), <u>citing</u> <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d

10   1310, 1314 (9th Cir. 1989).

11        An allegation that a defendant subjected a prisoner to

12   "[v]erbal harassment or abuse . . . is not sufficient to state a

13   constitutional deprivation under 42 U.S.C. § 1983." <u>Oltarzewski</u>

14   <u>v. Ruggiero</u>, 830 F.2d 136, 138 (9th Cir. 1987) (internal

15   quotations omitted).  However, in the context of a prisoner's

16   retaliation claim, threats of discipline or transfer for the

17   plaintiff's exercise of his First Amendment rights are sufficient

18   adverse action to state a claim. <u>See</u> <u>Gomez v. Vernon</u>, 255 F.3d

19   1118, 1123 (9th Cir. 2001); <u>Valandingham v. Bojorquez</u>, 866 F.2d

20   1135, 1141 (9th Cir. 1989).

21        Plaintiff claims defendant Cry warned him about the content

22   of plaintiff's expression in a grievance form, then asked another

23   inmate whether plaintiff was filing grievances for others, denied

24   three grievances by plaintiff, then told his superior plaintiff

25   was filing too many grievances.  Plaintiff may be able to prove

26   facts consistent with these allegations establishing Cry

1  retaliated against him for exercise of his First Amendment right

2  to file a prison grievance.  He states a claim against Cry.

3      Belancik and Moreno refused to make copies for plaintiff (as

4  ordered by the warden), threatened to place an illegitimate

5  "hold" on plaintiff's trust account and have plaintiff

6  transferred if he did not withdraw his request, and then did

7  place the "hold" on plaintiff's trust account.  The allegations

8  of the pleading suggest only that Belancik and Moreno threatened

9  and punished plaintiff for inconveniencing them by insisting they

10 make photocopies--not for filing a grievance.  Plaintiff does not

11 have a First Amendment right to have copies of documents from his

12 prison file.  Plaintiff fails to state a claim against Belancik

13 and Moreno.

14      Plaintiff claims Ramirez-Palmer, Valadez, Rianda and Loftin

15 ratified the misconduct of Cry, Belancik, and Moreno.  To state a

16 claim against a supervisor in his or her individual capacity

17 plaintiff must allege the supervisor set in motion a series of

18 acts by others, or knowingly refused to terminate a series of

19 acts by others, that the supervisor knew or reasonably should

20 have known would cause others to inflict constitutional injury.

21 Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).

22 A supervisory official also may be liable in his individual

23 capacity for his own culpable action or inaction in training,

24 supervising, or controlling his subordinates, for his

25 acquiescence in constitutional deprivations or for conduct that

26 reflects a reckless or callous indifference to the rights of

1  others.  <u>Larez</u>, 946 F.2d at 646 (internal quotations omitted).

2      When Cry's warning was brought to the attention of the

3  warden, she determined <u>plaintiff</u> had filed a staff complaint to

4  "retaliate" against Cry.  This determination was signed by

5  Valadez.  Plaintiff later filed a grievance challenging Belancik

6  and Moreno's conduct, and the warden determined a "freeze" as

7  alleged by plaintiff "could not be ordered," but that plaintiff's

8  account had not been frozen and there were "no violations" by

9  Moreno and Belancik.  Plaintiff claims the warden, through

10  Valadez, ratified Cry's scheme to harass and retaliate against

11  plaintiff for filing grievances, and encouraged misconduct by her

12  officers by denying plaintiff's grievances based on the identity

13  of the grieving party.  Plaintiff also claims the warden remained

14  silent when her successor, Schwartz, chastised him for wasting

15  staff time by petitioning the government.  This states a claim

16  under <u>Larez</u>.

17      Regarding Loftin and Rianda, plaintiff alleges only that

18  they denied his grievances and Cry, Belancik and Moreno at the

19  highest level.  He cites no specific language in the denial, nor

20  other circumstance, supporting an inference Loftin and Rianda

21  encouraged an ongoing pattern of retaliation for First Amendment

22  expression, thus causing further misconduct.  The pleading fails

23  to state a claim against Loftin and Rianda.

24      Thus, claims against Belancik, Loftin and Rianda should be

25  dismissed for failure to state a claim.

26      Defendants next argue plaintiff lacks standing to seek

1  injunctive relief prohibiting retaliation at some time in the

2  future because there is no "demonstrated probability" plaintiff

3  will be injured.  See Murphy v. Hunt, 455 U.S. 478, 482 (1982);

4  see also Los Angeles v. Lyons, 461 U.S. 95 (1983) (for injunctive

5  relief, plaintiff must demonstrate "a sufficient likelihood that

6  he will again be wronged in a similar way").

7       The court disagrees.  The pleading alleges an ongoing and

8  pervasive pattern by Cry, endorsed by the warden, to punish and

9  threaten plaintiff for filing grievances.  Plaintiff remains

10 incarcerated at CMF, is likely to file grievances in the future,

11 and there is nothing to suggest Cry will voluntarily desist from

12 allegedly retaliating against plaintiff.  Plaintiff has alleged

13 facts supporting the inference he is "realistically threatened by

14 a repetition of [the violation]."  Lyons, 461 U.S. at 109

15 (emphasis added).  He also may be able to establish, consistent

16 with his pleading, his injury stems from a written policy or a

17 "pattern of officially sanctioned [] behavior."  Armstong v.

18 Davis, 275 F.3d 849 (9th Cir. 2001) (internal quotations

19 omitted), citing Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir.

20 2001), inter alia.

21      Defendants next turn around and argue claims against Cry in

22 the supplemental pleading challenging further instances of

23 retaliation are unexhausted and therefore mandate dismissal.

24 Title forty-two of the United States Code § 1997e(a) provides a

25 prisoner may bring no § 1983 action until he has exhausted such

26 administrative remedies as are available.  The requirement is

1   mandatory.  Booth v. Churner, 532 U.S. 731, 741 (2001).  The

2   administrative remedy must be exhausted before suit is brought

3   and a prisoner is not entitled to a stay of judicial proceedings

4   in order to exhaust.  McKinney v. Carey, 311 F.3d 1198 (9th Cir.

5   2002).

6        The prison has been alerted to the nature of the wrong for

7   which redress is sought.  Irvin v. Zamora, 161 F. Supp. 2d 1125,

8   1128 (S.D. Cal. 2001); Strong v. Davis, 297 F.3d 646, 650 (7th

9   Cir. 2002).  Plaintiff's prior grievances provided prison

10  officials notice of claimed retaliation and an opportunity to

11  take proper action.  Gomez v. Winslow, 177 S. Supp. 2d 977, 982

12  (N.D. Cal. 2001) (purpose of exhaustion is to provide prison

13  officials notice of complaints so they can take proper action);

14  see also Sulton v. Wright, 265 F. Supp. 2d 292, 298 (S.D. N.Y.

15  2003) (exhaustion is satisfied if charges in administrative

16  complaint were "like or reasonably related to" federal claims,

17  such that investigation of the administrative complaint would

18  have revealed facts supporting civil rights complaint), abrogated

19  on other grounds as noted in Scott v. Gardner, 287 F. Supp. 2d

20  477 (S.D. N.Y. 2003); Torrence v. Pelkey, 164 F. Supp. 2d 264,

21  278-79 (D. Conn. 2001) (declining to require exhaustion of new

22  issues in medical care that arose from the "same series of

23  events" that had already been exhausted).  Claims in the

24  supplemental pleading are exhausted.

25       Based on the foregoing, the court hereby recommends that:

26       1.  Defendants' November 19, 2004, motion to dismiss be

granted in part.

2.   Claims against Belancik, Moreno, Loftin and Rianda be dismissed for failure to state a claim.

3.   Defendants Cry, Ramirez-Palmer and Valadez be required to answer the third amended and supplemental complaint.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1), these findings and recommendations are submitted to the United States District Judge assigned to this case.  Written objections may be filed within 20 days of service of these findings and recommendations.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge may accept, reject, or modify these findings and recommendations in whole or in part.

Dated:  August 4, 2005.

                              /s/ Peter A. Nowinski
                              PETER A. NOWINSKI
                              Magistrate Judge