IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL J. BRODHEIM,

        Plaintiff,                No. CIV S-02-0573 FCD EFB P

    vs.

MICHAEL CRY, et al.,

        Defendants.       ORDER AND
                            FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983.  He claims that defendants retaliated against him for exercising his First Amendment right to petition the government for redress of grievances, and that defendants' actions had the effect of chilling his further exercise of his First Amendment rights.  Plaintiff also asserts a pendent state court claim that defendants interfered, or attempted to interfere, by means of threats, intimidation, or coercion, with his exercise or enjoyment of constitutional and statutory rights.  This matter is before the court on plaintiff's motion for partial summary judgment filed April 21, 2006, and defendants' motion for summary judgment filed June 13, 2007, both pursuant to Fed. R. Civ. P. 56.

/////

1

I.      **Procedural History**

On November 9, 2005, the court issued a scheduling order that set May 5, 2006 as the cut-off date for filing pretrial motions.  On April 21, 2006, plaintiff filed a motion for partial summary judgment, together with a statement of undisputed facts, exhibits, and declarations in support of his motion.  On May 2, 2006, and June 7, 2006, defendants requested extensions of time in which to file a motion for summary judgment.  Those requests were granted by orders filed May 5, 2006, and June 13, 2006.  Defendants filed their motion for summary judgment on June 13, 2006, together with exhibits and a statement of undisputed facts.  Plaintiff timely filed a response in opposition on August 4, 2006, together with a declaration and exhibits.

On August 18, 2006, defendants filed a motion to vacate the pretrial cut-off dates and trial date.  That motion was granted in part in an order filed September 29, 2006, which vacated the trial date.  The remainder of the motion, to vacate the pretrial cut-off dates, is denied by operation of this order.  On October 17, 2006, defendants filed an amended motion for summary judgment without seeking leave of court to do so or setting forth good cause why the court should allow an amended motion to be filed at such a late date.  By way of that motion, defendants seek to elaborate on procedural changes to the appeals process at issue since the inception of this suit.  Given the absence of a request to extend the deadline, the court denies defendant's October 17, 2006, amended motion for summary judgment as untimely.  Further, the court deems such additional information unnecessary to its determination of defendants' success on their motion, as reasoned below.

II.     **Summary Judgment Standards Under Rule 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of

> "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita,* 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

To establish a genuine dispute of a material issue of fact "the claimed factual dispute [must] be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c). *See Anderson*, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

On September 2, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

/////
/////
/////
/////

**III.     Analysis**

    **A.     Undisputed Facts**[1]

It is undisputed that at all times material here plaintiff was incarcerated at the California Medical Facility (CMF).  Defendants' Exhibit A (Ex. A), Attach. 1 at 1-3.  Defendant Ramirez-Palmer was the Warden; defendant Valadez was the Chief Deputy Warden; and, defendant Cry was the Appeals Coordinator at CMF.  Third Amended Complaint (Compl.) at 2, § 3.

As a state prisoner, plaintiff is subject to the Rules and Regulations contained in (Division 3 of) Title 15 of the California Code of Regulations.  Plaintiff's Statement of Undisputed Facts (PSF), ¶ 6.  Those rules establish a procedure for inmate grievances and appeals.  Any inmate or parolee may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare.  Ex. B, Cal. Code Regs. tit. 15 ("CCR"), §§ 3084 *et seq*.  The decisions of the Departmental Review Board, which serve as the director's level decision, are not appealable and conclude the inmate's or parolee's departmental administrative remedy.  *Id*.

An inmate files a grievance by submitting a CDC Form 602.  Ex. B, CCR § 3084.2(a).  A limit of one continuation page, front and back, may be attached to the appeal to describe the problem and action requested in sections A and B of the form.  Ex. B, CCR § 3084.2(a)(1).

Each institution and each parole region designates an appeals coordinator who screens, categorizes, and coordinates the processing of the inmate appeals.  Ex. B, CCR § 3084.3.  An appeal may be rejected for any of the following reasons: (1) the action or decision being appealed is not within the jurisdiction of the department; (2) the appeal duplicates the appellant's previous appeal upon which a decision has been rendered or is pending; (3) the appeal concerns an anticipated action or decision; (4) the appellant has not included evidence of attempt to resolve the grievance at the informal level, unless the informal level is waived by these

---

[1]  Unless otherwise indicated, the facts are taken from defendants' exhibits A-G, attached to their statement of undisputed facts.

regulation[s] [*sic*]; (5) the appeal is incomplete or necessary supporting documents are not attached; (6) time limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints; (7) the appeal is filed on behalf of another inmate or parolee, except as provided in section 3084.4.  *Id.*

An appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision.  *Id.*, at § 3084.6(c). When rejecting an appeal, the appeals coordinator completes an Appeals Screening Form, explaining to the inmate why the appeal was rejected.  *Id.*, at § 3084.3(d).

The informal level of appeal is waived for alleged misconduct by a departmental peace officer.  *Id.*, at § 3084.5(a)(3)(G).

On June 18, 2001, plaintiff submitted a grievance concerning Officer Hearsum. Specifically, plaintiff alleged that on May 10, 2001, he was attempting to return to work when Correctional Officer (hereafter "C/O") Hearsum told plaintiff he was out of bounds and instructed him to return to work via Unit 1, at the west grill gate. Ex. A, part 1 (A-1), at 10. Instead of complying with the order, plaintiff asked for something in writing that would confirm C/O Hearsum's assertion that plaintiff was out of bounds.  *Id.*  According to plaintiff, C/O Hearsum "became visibly angry with me when I asked this question, and told me again that I was out of bounds.  When I repeated my question, C/O Hernandez, who was sitting at the Unit I grill gate, became belligerent toward me and ordered me to leave.  I did as I was ordered, without being given an answer to my question.  Although I was at all times respectful to them, C/Os Hearsum and Hernandez were both contemptuous and discourteous toward me." *Id*. Plaintiff sought a copy of the rule cited by Hearsum, or if no such rule existed, to have C/Os Hearsum and Hernandez apprised of that fact, and reminded of their "responsibilities to remain respectful and courteous at all times in their dealings with inmates." *Id.*, at 11.

/////

////

Defendant Cry received plaintiff's grievance on June 18, 2001.  *Id*., at 13, 21.  Attached to the grievance was a note from plaintiff explaining that he had submitted the appeal to C/O Hearsum on May 21, 2001, but had not received a response.  *Id*., at 12.  After reviewing the appeal, defendant Cry characterized the grievance as a complaint against staff.  *Id*., at 13. Because the grievance was received more than a month after the alleged incident took place, defendant Cry rejected the appeal as untimely, even though plaintiff had dated the appeal form May 10, 2001.  *Id.*  The rejection was then returned to plaintiff.  *Id*., at 14.

On or about June 30, 2001, plaintiff submitted (via institutional mail) an "Inmate Request for Interview" to Cry, explaining why plaintiff disagreed with Cry's rationale for rejecting his appeal.  Plaintiff appended to this request the appeal concerning Officer Hearsum, plaintiff's note of June 18, and the rejection notice**.**  Plaintiff stated that his grievance was:

> not a staff complaint – any more than was my appeal involving C/O Lindstrom. I am requesting information (see part B).  Any misconduct by C/O Hearsum or C/O Hernandez was incidental to the story.  I want to know why I could not walk thru Unit I, and I think I'm entitled to an answer. You're such a stickler for the rules as you see them. Why not teach staff that they are required to respond informally to 602's w/in 10 working days – or is it your position that Title 15 applies only against inmates? Or, is it your position that I am not entitled to the information I request? What exactly is your position, Mr. Cry – obstruct 602's at all costs??? This appeal was timely submitted to C/O Hearsum w/in 15 working days. (See my 6/18 note). Thank you for your cooperation.

*Id*., at 14.

On June 21, 2001, defendant Cry responded to plaintiff's request for interview, indicating that the rejection notice would stand as plaintiff's appeal was untimely, and with the following message: "I'd also like to warn you to be careful what you write, req[u]est [*sic*] on this form." *Id.*

/////

/////

7

On June 26, 2001, plaintiff filed a staff complaint against Cry, alleging that Cry erroneously rejected plaintiff's appeals. *Id.*, at 15-18. The appeal was bypassed at the first level of review, and plaintiff's allegations were investigated at the second level. *Id.*, at 16, 21.

On August 21, 2001, plaintiff received the second level response to his appeal. PSF, ¶ 16. The second level response was dated July 23, 2001, and signed by defendant Valadez on behalf of Warden Ramirez-Palmer. *Id.* The response stated that "Cry was interviewed and he indicated that [plaintiff] submitted an inmate request for interview form on June 20, 2001 and [defendant] Cry responded and did write on the form, 'I'd also like to warn you to be careful what you write, request on this form.' [Defendant] Cry indicated that this was no form of harassment, just simply advising [plaintiff] to be careful on what he writes." The response set forth the determination that plaintiff had

> "fail[ed] to offer sufficient information to support his claim that [defendant] Cry has ... violated any of [plaintiff's] rights for submitting inmate appeals" and concluded that "it is apparent that [plaintiff] elected to submit the enclosed CDC-602 appeal as a form of retaliation against [defendant] Cry as Mr. Cry acted within the scope of his duties as the Appeals Coordinator by rejecting [plaintiff's] original appeal. [Plaintiff] failed to comply with the time limits and was not harassed in any way by 'warning' him. Therefore, this appeal is Denied at the Second Level of review."

*Id.*

Dissatisfied, plaintiff filed his grievance at the Director's Level, claiming that it is not "possible for an inmate to retaliate against a staff member." Ex. A-1, at 23. Plaintiff also claimed that Mr. Cry's "warning", coupled with Cry's "repeated unsolicited commentary," exerted a "chilling effect" on his right to file grievances. *Id.*, at 16, 23-25. Plaintiff's grievance did not claim that there was a policy put in place by the administration to block his appeals. *Id.* In explaining his dissatisfaction with the Warden's second level response, plaintiff suggested that "[i]f the Appeals Coordinator feels that I am 'retaliating' against him by filing this CDC-602, perhaps he should be assigned to a position where he is less 'vulnerable' to such feelings." PSF, ¶17. Plaintiff added,

> I can only construe [Appeals Coordinator Cry's] warning, as well as [his] repeated unsolicited commentary regarding the frequency of my filings, as an attempt to exert a 'chilling effect' on my right to file grievances (and thereby access the courts). The Warden's response, accusing me now of 'retaliating' against the Appeals Coordinator by filing this complaint against him, only adds to this 'chilling effect.' *** I ask again, why was I warned?!

*Id.*

On November 20, 2001, a Director's Level response issued. The Director's Level Decision noted plaintiff "claims that [defendant] Cry has ... threatened him," and also noted that plaintiff was requesting "that [defendant] Cry be disciplined ..." PSF, ¶ 18. The decision offered no explanation as to why Cry had warned plaintiff, concluded that plaintiff's complaint had been "appropriately denied," and noted that "[t]his decision exhausts the administrative remedy available to [plaintiff] within CDC." *Id.* Plaintiff's allegations were investigated and found to be unsubstantiated and his appeal was denied. Ex. A-1, at 26-28.

On May 22, 2001, plaintiff filed a grievance alleging that he had requested copies of documents contained in his central file, but had not received them. *Id.*, at 29-32. Plaintiff received a response from Associate Warden Caden on July 27, 2001, finding that plaintiff's request was unreasonable. *Id.*, at 34. Plaintiff appealed to the second level of review, and his appeal was partially granted by Defendant Valadez on behalf of Warden Ramirez-Palmer. *Id.*, at 37-40.

Since claiming that defendant Cry's warning had a chilling effect on his ability to file grievances, plaintiff has filed more than sixty grievances, including seven staff complaints, three of which were against defendant Cry. *Id.*, at 41-150; Ex. C (Inmate Appeals Tracking Report for Brodheim, CDC #C-46663).

On May 31, 2005, plaintiff filed a Petition For Writ of Habeas Corpus in the Superior Court for the County of Solano. Ex. D, part 1 (D-1). The petition alleged that Warden Schwartz had infringed on "petitioner's statutory and regulatory rights to file a complaint alleging peace officer misconduct by permitting the very subject of the complaint to screen,

1  review, and 'reject' the complaint itself (thereby preventing the allegations of the misconduct

2  from ever seeing the light of day, let alone ever being investigated)." *Id.*  In the statement of

3  facts included with that petition, plaintiff alleges that on November 2, 2003, he submitted a

4  grievance challenging the ambiguous language used in preparing risk assessments for inmates

5  sentenced to indeterminate sentences. Ex. D-1, at 7-8.  He further alleges that beginning on

6  November 8, 2003, defendant Cry engaged in misconduct by rejecting plaintiff's inmate appeals,

7  and that Warden Schwartz failed to correct and in fact exacerbated the problem by criticizing

8  plaintiff's First Amendment activity. *Id.*, at 8-12.  Attached to the petition were copies of the

9  several complaints plaintiff had filed, and the various responses he had received. *Id.*, at 26-35,

10  parts 2-5.

11      On December 12, 2005, the Superior Court denied plaintiff's petition, finding that he had

12  failed to state a prima facie case for relief.  Ex. E.  The court also concluded that plaintiff's staff

13  complaints had been investigated and that his allegations against defendant Cry were unfounded.

14  *Id.*  Since the prison had provided the remedy sought, plaintiff's petition was denied as moot.

15  *Id.*

16      On November 22, 2005, the Department of Corrections and Rehabilitation (CDCR)

17  issued new procedures for addressing staff complaints filed by inmates and parolees.  Ex. F.

18  (Administrative Bulletin No. 05-03).  The new procedures require that someone at the level of

19  Chief Deputy Warden or above review all staff complaint allegations, and determine whether an

20  Internal Affairs Investigation is warranted. *Id.*  If not, the Chief Deputy Warden assigns the

21  appeal for a First Level Response. *Id.*  The assigned reviewer interviews the appellant, and any

22  other pertinent witnesses. *Id.*  A confidential report is completed and maintained with the First

23  Level Response. *Id.*

24      Beginning in 2005, there have been two Correctional Counselors assigned as Appeals

25  Coordinators at CMF.  Ex. G, Decl. of V. Cullen.  In mid-2005, Counselor Piazza was

26  responsible for addressing plaintiff's appeals. *Id.*  Only when Piazza was gone for extended

1    periods did defendant Cry handle plaintiff's grievances.  *Id.*

2       **B.  Defendants' Motion**

3          **1.  Plaintiff's Allegations of Retaliation**

4       Retaliation by a state actor for the exercise of a constitutional right is actionable under 42

5    U.S.C. § 1983 because retaliatory actions may tend to chill individuals' exercise of constitutional

6    rights.  *See Perry v. Sindermann,* 408 U.S. 593, 597 (1972).  A prisoner suing prison officials

7    under § 1983 for retaliation must show that he was retaliated against for exercising his

8    constitutional rights and that the retaliatory action did not advance legitimate penological goals,

9    such as preserving institutional order and discipline.  *See Pratt v. Rowland,* 65 F.3d 802, 806

10   (9th Cir. 1995); *Barnett v. Centoni,* 31 F.3d 813, 816 (9th Cir. 1994).  The prisoner must show

11   that the type of activity he was engaged in was constitutionally protected, that the protected

12   conduct was a substantial or motivating factor for the alleged retaliatory action, and that the

13   retaliatory action advanced no legitimate penological interest.  *See Hines v. Gomez,* 108 F.3d

14   265, 267 (9th Cir. 1997).  At that point, the burden shifts to the prison official defendants to

15   show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to

16   serve a legitimate penological purpose.  *See Schroeder v. McDonald,* 55 F.3d 454, 461-62 (9th Cir. 1995).

17   Prisoners may not be retaliated against for exercising their right of access to the courts, *see id.* at

18   461; *Rizzo v. Dawson,* 778 F.2d 527, 532 (9th Cir.1985), or for using established grievance

19   procedures.  *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Hines v. Gomez,* 853

20   F.Supp. 329, 331-32 (N.D.Cal.1994).

21       Although a prisoner need not show that the retaliatory action taken in response to his

22   constitutional rights independently deprived him of a constitutional right, *see Vignolo v. Miller,*

23   120 F.3d 1075, 1078 (9th Cir.1997), he must at least show that the defendants' actions caused

24   him some injury.  *See Resnick v. Hayes,* 200 F.3d 641, 647 (9th Cir. 2000) (plaintiff at minimum

25   must allege that his First Amendment rights have been chilled or infringed).  He must

26   demonstrate that the defendants' conduct caused him some adversity, not just a *de minimis*

inconvenience.  *See ACLU of Maryland v. Wicomico County,* 999 F.2d 780, 785-86 n. 6 (4th Cir.1993); *accord Hines,* 108 F.3d at 269.

Plaintiff claims that defendant Cry took adverse action against him because he filed a request for an inmate interview, and that such action chilled his exercise of his First Amendment rights to the extent that he forewent the filing of at least one complaint.  He claims that he was "unwilling to risk unknown consequences by filing another complaint against [defendant] Cry." Compl., at ¶ 20.

The genesis of plaintiff's claim is his submission of an "Inmate Request for Interview," following the rejection of an appeal, in which he included comments such as "[y]ou're such a 'stickler'" for the rules as you 'see' them" and "[w]hy not teach staff that they are required to respond informally to 602's w/in 10 working days" and pointedly questioning the defendant as to "[w]hat exactly is your position, Mr. Cry – obstruct 602's at all costs???"  Ex. A-1, at 14. Defendant Cry's response reaffirmed the rejection of plaintiff's grievance and included the handwritten notation "I'd also like to warn you to be careful what you write, req[u]est on this form."  *Id.*  Taken in the context of the totality of the record here, it strains credulity to suggest that this notation had a chilling effect on plaintiff's exercise of his First Amendment rights or his rights under the regulations to file grievances or appeals.  Any suggestion that it did is belied by plaintiff's subsequent filing of over sixty grievances, including seven staff complaints, three of which were filed against defendant Cry.  *Id.*, at 41-150; C-1.  There is no evidence in this record that a reasonable fact finder could rely upon to conclude that the handwritten notation had a chilling effect on the exercise of plaintiff's rights.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252 (The evidence relied on to demonstrate a genuine factual dispute must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented.").

Moreover, there is a legitimate penological purpose in admonishing inmates as to the manner and tone they adopt with prison authorities.  *Bradley v. Hall*, 64 F.3d 1276, 1280 (9th Cir.1995).  This is a concern that has nothing to do with suppression of communication but is

1   directly related to maintaining order in an often stress-filled and dangerous environment.  When

2   an inmate goes beyond explaining the reasons for his grievance and includes *ad hominem*

3   comments directed at an officer, this concern is implicated.  As the Inmate Appeals Coordinator,

4   defendant Cry is charged with the specific duty of screening inmate appeals for compliance with

5   the CDCR regulations.  *See* Cal. Code Regs. tit. 15, § 3084.3.  Inmates housed by the California

6   Department of Corrections and Rehabilitation are advised by the regulations that "[i]nmates,

7   parolees and employees will not openly display disrespect or contempt for others in any manner

8   intended to or reasonably likely to disrupt orderly operations within the institutions . . . ."  *Id.,* at

9   § 3004(b).  Plaintiff provides no evidence to support that defendant Cry's accompanying

10  "warning" was anything other than a cautionary statement regarding the patently disrespectful

11  tone in which plaintiff's request for an inmate interview was made.  The admonition in no way

12  suggested that plaintiff should not file further grievances or appeals and was entirely appropriate

13  here.

14          There is no evidence to support a conclusion that Cry's statement was an "adverse

15  action."  Plaintiff refers to this statement as a "warning" with unknown consequences, yet makes

16  the bare assertion that he perceived this as a threat of discipline or transfer.  Plaintiff argues that,

17  in the context of a retaliation claim, threats of discipline or transfer for the exercise of First

18  Amendment rights constitute "adverse action" sufficient to state a claim for retaliation, relying

19  on

20  *Rhodes v. Robinson*, 408 F.3d at 568 (citing *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)

21  (threats to transfer inmate from job because of complaints constituted retaliation where chilling

22  effect of threats forced him to quit job).  The point is taken, but it is inapposite here.  In the

23  context of this summary judgment motion, plaintiff must present evidence showing that such a

24  threat to transfer for the exercise of First Amendment rights actually occurred.  He has not.

25  Indeed, even the allegations of the complaint fail to support that contention.  In order to state a

26  retaliation claim, a plaintiff must plead facts that suggest retaliation for the exercise of protected

1   conduct was the "substantial" or "motivating" factor behind the defendant's conduct.  *See*

2   *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).  Defendant Cry's written

3   statement does not directly mention nor even allude to any consequence to plaintiff's failure to

4   heed his advice.  The evidence cannot support a conclusion that Cry's written statement to

5   plaintiff constituted a threat of discipline or transfer at all, let alone retaliation for filing a

6   grievance.

7         Assuming, *arguendo*, that Cry's statement was made in retaliation for plaintiff's exercise

8   of his First Amendment right, plaintiff presents no evidence that he was injured by the notation.

9   He must demonstrate that the notation had a "chilling effect" on the assertion of his First

10  Amendment rights, i.e. filing grievances or accessing the courts.  *See Hines*, 108 F.3d 265.  He

11  argues that his filing of a grievance was chilled on one occasion:

12        [o]n February 15, 2002, plaintiff was informed that defendant Cry has written an
          administrative grievance on behalf of one of CMF's disabled inmates.  Cry
13        informed this other inmate that the handwriting (on the 602) looked like
          plaintiff's.  Plaintiff wanted to file an administrative appeal alleging that,
14        inasmuch as inmates are expressly permitted, by regulation, to assist one another
          in the preparation of appeals, there was no legitimate reason for Cry's inquiry or
15        comment; in light of Cry's earlier "warning," however, as well as the Warden's
          subsequent determination that plaintiff had submitted his previous staff complaint
16        "as a form of retaliation against CC II Cry," plaintiff was unwilling to risk
          unknown consequences by filing another complaint against Cry."

17

18  Compl., at ¶ 20.

19        The California Code of Regulations expressly places limits on inmate assistance with the

20  filing of grievances.  Title 15 § 3084.2(d) states, in relevant part, "[a]n inmate . . . may assist

21  another inmate or parolee with preparation of an appeal unless the act of providing such

22  assistance would create an unsafe or unmanageable situation."  It is therefore appropriate for the

23  appeals coordinator to inquire into situations in which he believes or knows of an inmate

24  receiving assistance in the filing of an appeal.  Inmates "may appeal any departmental decision,

25  action, condition, or policy which they can demonstrate as having an adverse effect upon their

26  welfare."  Cal. Code Reg. tit. 15, § 3084.1.  Plaintiff has not alleged, and the court can not

imagine, a manner in which defendant Cry's inquiry into plaintiff's assistance in the filing of another inmate's complaint could have adversely affected his welfare.  Plaintiff did not have a colorable complaint against defendant Cry, and therefore, his foregoing of filing a complaint on this basis does not amount to an injury.

In his supplemental pleading to his third amended complaint filed on September 22, 2004, plaintiff alleges a second circumstance to prove that his speech was chilled.  Plaintiff states that Correctional Counselor Prebula approached him on June 18, 2004, and asked plaintiff if he had been "going a little crazy filing 602's lately."  Plaintiff claims that he would like to address the issue in some administrative context but is concerned about the consequences of doing so because he is "mindful of the 'warning' by defendant Cry . . . as well as the subsequent response of the Warden."  Plaintiff fails to demonstrate how this question posed by Correctional Counselor Prebula adversely affected his filing an appeal on the basis of these facts.

The third instance plaintiff alleges had a "chilling effect" on his speech involves a staff complaint against defendant Cry that plaintiff submitted to the Warden for Director's Level Review, after receiving the warning plaintiff perceived as retaliatory and chilling.  Far from constituting evidence that his speech was chilled, this fact is compelling evidence that plaintiff was not deterred in the least from exercising his rights but went on to file a further grievance.

The warden responded to plaintiff that this new grievance appeared to be "a form of retaliation against [defendant] CCII Cry."  Plaintiff claims that this statement alone caused him to fear "unknown consequences" in the pursuit of his first appeal.  The warden's observation does not threaten discipline or transfer for the filing of the appeal, but asserts that plaintiff's filing does not state grounds for the grievance and appears to have been filed out of anger at his appeal being denied.  Plaintiff has failed to demonstrate a genuine issue of material fact regarding the chilling of the exercise of his First Amendment right.

////

////

15

On the contrary, plaintiff alleges that he filed a "staff complaint" against defendant Cry after receiving Cry's warning.  The record shows that plaintiff not only filed a grievance immediately upon receiving defendant Cry's warning, but thereafter filed more than sixty grievances.

Finally, as noted, plaintiff must present evidence showing an absence of legitimate correctional goals for the conduct he contends was retaliatory.  *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).   He fails to do so.  Instead, he argues that "the importance of the prisoner's right of access to the courts in the context of filing a grievance" overshadows whatever legitimate penological interest defendant Cry may have believed he was asserting.  He relies on *Bradley v. Hall*, 64 F.3d 1276 (9th Cir. 1995), in which certain regulations of the Oregon Department of Corrections (ODOC), permitting actual discipline for the use of disrespectful language by prisoners were held unconstitutional as applied to the contents of prisoner grievances.  The *Bradley* court acknowledged the "prison's valid interest in the peaceable operation of the prison *through the insistence on respect*, rather than through violent confrontation," but found that "absolutist arguments for enforcement of disrespect rules in every communication public and private overstate their substantial importance."  *Id.* at 1281 (emphasis added).  The *Bradley* court further found, however, that the prison's legitimate penological goals could be met without enforcement of the disputed regulations "by procedures that require grievances to be in writing and *shield those prison officials who are in direct contact with the inmates from reading any insulting remarks that might be contained in those grievances*."  *Bradley,* 64 F.3d at 1281 (emphasis added); *compare Loggins v. Delo*, 999 F.2d 364, 367 (8th Cir. 1993).   That alternative appears to be precisely what defendant Cry attempted here.

In the instant case, it is the appeal coordinator himself who was the subject as well as the intended reader of plaintiff's complaint, and therefore could not be "shielded" as *Bradley* proposed.  Ultimately, *Bradley* held that because the legitimate penological interests the

1   disrespect rules serve could be accommodated without burdening a prisoner's fundamental right

2   of access to the courts, the application of the rules to the plaintiff's written grievance was an

3   "exaggerated response" outweighed by the plaintiff's infringed right.  *Bradley*, 64 F.3d at 1280.

4   In the instant case, access to the courts was in no way burdened.  Neither was plaintiff impeded

5   from filing grievances or exercising any other First Amendment right.  Thus, the legitimate

6   penological interest of the appeals coordinator in cautioning against the use of disrespectful

7   language aimed directly at the person from whom plaintiff seeks assistance is not outweighed.

8   Nor could that legitimate interest be accommodated in any other way.  Regardless, plaintiff was

9   not threatened with punishment nor actually punished for the use of disrespectful language in his

10  grievance.

11       There is no evidence to support a conclusion that defendant Cry's written statement to

12  plaintiff regarding the language of his grievance was retaliatory.  Moreover, even assuming the

13  admonition was, in fact, an adverse action (which it was not), the appeals coordinator's

14  admonition was justified by the legitimate correctional goal of maintaining respectful

15  communications for the handling of inmate complaints.  The court therefore recommends that

16  summary judgment be granted in favor of defendants.

17              **2.   Plaintiff's Claims Are Barred by *Res Judicata***

18       Alternatively, defendants argue that plaintiff's suit is barred by the doctrine of *res

19  judicata,* because he is attempting to litigate claims that he brought, or could have brought, in a

20  prior state court action, which was dismissed on the merits in December 2005.  Under the

21  doctrine of *res judicata*, a final judgment on the merits precludes the parties or their privies from

22  relitigating issues that were or could have been raised in that action.  *Dodd v. Hood River

23  County*, 59 F.3d 852, 863 (9th Cir. 1995).  The doctrine encompasses two concepts: issue

24  preclusion and claim preclusion.  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77

25  n.1 (1984); *Dodd*, 59 F.3d at 863.  "Issue preclusion [collateral estoppel] refers to the effect of a

26  judgment in foreclosing relitigation of a matter that has been litigated and decided."  *Migra,* 465

17

U.S. at 77 n.1.  "Claim preclusion [*res judicata*] refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit."  *Id.*  Claim preclusion "bar(s) all grounds for recovery which *could have been asserted*, whether they were or not, in a prior suit between the same parties . . . on the same cause of action." *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980) (emphasis added); *Lester v. NBC*, 217 F.2d 399, 400 (9th Cir. 1954), cert. denied, 348 U.S. 954,(1955) ("a judgment's finality applies to facts which might have been pleaded with reference to the same event as well as to those actually pleaded"); *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975), *cert. denied*, 423 U.S. 1066 (1976) *(res judicata* bars "assertion of every legal theory ... that might have been raised" in first action); *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980) ("(*r*)*es judicata* preclusion extends only to claims that arise out of the same 'cause of action' asserted in the prior action").

The doctrine of *res judicata* is applicable to section 1983 actions.  *Clark v. Yosemite Comm'y College Dist.*, 785 F.2d 781, 788 n.9 (9th Cir. 1986) (noting that there is no exception to the rules of issue and claim preclusion for federal civil rights actions brought under 42 U.S.C. § 1983).  The doctrine is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Id.*  Here, all three criteria are present.

### a.  **Identity Of Claims**

"The central criterion in determining whether there is an identity of claims between the first and second adjudications is 'whether the two suits arise out of the same transactional nucleus of facts.'" *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (citations omitted).

The operative complaint in the instant case specifically references a rejected grievance dated November 2, 2003, which was at the heart of plaintiff's state court petition filed May 31, 2005, in Solano County Superior Court, seeking relief for the "infringement of right to file

complaint alleging officer misconduct." Ex. D-1.  Attached to plaintiff's habeas petition are several of the grievances that plaintiff offers as exhibits in this case.  Several of the claims set forth in this action are the same claims, based on the same transactions, as alleged in plaintiff's state court petition.  Compl. at ¶¶ 33-35.

Comparing plaintiff's state court action to the present action, the issues in both suits revolve around plaintiff's allegation that his First Amendment right to file grievances were chilled by the actions of Appeals Coordinator Cry, and the Warden did not stop Cry's actions.

The claims plaintiff raised in paragraphs 13-20, encompassing the dates June 18, 2001, through February 15, 2002, are also barred because these allegations could have been raised in plaintiff's state court petition.  If the same primary right is involved in two actions, judgment in the first bars consideration of all matters that were raised or could have been raised in the first suit. *Western Radio Servs. Co., Inc. v. Glickman*, 1223 F.3d 1189, 1192 (9th Cir. 1997) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

All of plaintiff's claims, past and current, are derived from plaintiff's allegations that defendant Cry blocked plaintiff's grievances.  All of the claims currently being put forth arise out of the same transactional nucleus of fact. Therefore, there is an identity of claims between the present suit and plaintiff's dismissed state court petition.

### b.  Final Judgment On The Merits

The Solano County Superior Court denied plaintiff's petition on the merits.  In its February 25, 2004, decision, it held:

> Petitioner failed to make a prima facie showing that the Appeals Coordinator engaged in misconduct by rejecting petitioner's prior appeals. *People v. Duvall* (1995) 9 Cal.4th 464, 474.  The Appeals Coordinator is authorized to reject any inmate appeal in which "Time limits for submitting the appeal are exceeded and the appellant has the opportunity to file within the prescribed time constraints."  (Cal Code Reg., Tit. 15, Section 3084.3(c)(6)).  Accordingly, this Petition for Writ of Habeas Corpus is denied.

Ex. D-3, 4.

////

1   After receiving this decision, plaintiff appealed to the Court of Appeal for the First

2   District of California, Fifth Division.  That petition was denied on July 9, 2004, with a finding

3   that plaintiff had failed to exhaust administrative remedies.  Ex. D-3, 4.  The court instructed

4   plaintiff that after exhausting administrative remedies he would again need to return to superior

5   court before filing in the court of appeal.  Plaintiff returned to superior court and filed a second

6   petition, which was denied in an order filed December 15, 2005, which stated:

7       Having carefully considered the petition and the submissions of the parties, the Court
        finds that Petitioner has failed to state a prima facie case for relief (*People v. Duvall*
8       (1995) 9 Cal.4th 464, 475).  A memorandum from the warden dated January 20, 2004,
        indicates that the warden's staff investigated Petitioner's complaint against Appeals
9       Coordinator Cry and found that Officer Cry has not engaged in any misconduct.  The
        prison has already provided the remedy sought in the petition by investigating
10      Petitioner's complaint against Appeals Coordinator Cry, rendering the matter moot (*in re
        Ronald E.* (1977) 19 Cal.3d 315, 328; *Frias v. Superior Court* (1975) 51 Cal.App.3d 919,
11      923).

12  Ex. E.  The court found that plaintiff's complaint was mooted when the warden's staff screened

13  the complaint instead.  The claims disposed of by the Solano County Superior Court are now

14  included in the operative complaint in the instant case.  Plaintiff argues that the state court

15  decided the issue as to only "at most, events occurring in the 2 ½ month period between

16  November 2, 2003, and January 20, 2004."  As discussed above, the doctrine of *res judicata* bars

17  relitigation of not only claims but issues as well.  The state court decided the issue that is at the

18  core of this complaint.

19      Therefore,  plaintiff is barred from reasserting his claims in the present action.

20  Allowing plaintiff to proceed with his present case would circumvent the clear intent of the prior

21  order of dismissal.

22          **c.   Identity Or Privity Between Parties**

23      The current action involves the same parties to the first action, or their privies.  In

24  determining whether the same parties or their privies are involved, "'[t]he essential consideration

25  is that it is the right of the (same people) which was presented and adjudicated in both courts.'"

26

1   *American Triticale, Inc. v. Nytco Services, Inc.*, 664 F.2d 1136, 1147 (9th Cir. 1981) (citing

2   *Chicago, R. I. & P. Ry. Co. v. Schendel*, 270 U.S. 611 (1926)).  Privity generally refers to

3   persons who are so identified in interest with the parties in the original action that it is proper to

4   bind them along with the parties to the original litigation.  *Jones v. Bates*, 127 F.3d 839, 848

5   (9th Cir. 1997).

6   The focus of the inquiry is whether the party in the later action is "sufficiently close"

7   to the party in the first action so as to justify application of preclusion principles. *Trujillo v.*

8   *County of Santa Clara*, 775 F. 2d 1359, 1367 (9th Cir. 1985). This requires a contextual

9   approach based on mere formalities with regard to the parties.  *Id.* (Finding former county

10   employee's interests to be in privity with Fair Employment and Housing Commission where

11   Commission authorized to proceed against county on former employee's behalf.)  Under modern

12   interpretations of preclusion, the fact that certain defendants were not actual parties to the prior

13   litigation does not prevent the doctrine from applying.  *MCA Record, Inc. v. Charly Records,*

14   *Ltd.*, 865 F. Supp. 649, 654 (C.D.Cal. 1994).  Privity exists, for example, between officers of the

15   same government so that a judgment in a suit between a party and a representative of the

16   government is *res judicata* in relitigation of the same issue between that party and another

17   officer of the government.  *Church of New Song v. Establishment of Religion on Taxpayers'*

18   *Money*, 620 F.2d 648, 654 (7th Cir. 1980), *cert denied*, 450 U.S. 929 (1981) (prison employees

19   at federal prison in Texas in privity with prison employees at federal prison in Illinois as both

20   suits against employees of Federal Bureau of Prisons).

21   In his habeas petition, plaintiff named Warden Schwartz as the respondent, claiming that

22   she failed to take action against Appeals Coordinator Cry. These are the same allegations made

23   in paragraphs 32-35 of plaintiff's third amended complaint.

24   The parties in both actions are employees working of the California Department of

25   Corrections who have, in one context or another, addressed plaintiff's claims that defendant Cry

26   interfered with plaintiff's right to file grievances.  In each case, the Warden investigated

1  plaintiff's allegations and found them to be without merit. With respect to the instant action, the

2  interests of the named defendants in defending the allegations advanced by plaintiff are the same

3  as the defendants in the prior federal court action. Therefore, the parties in both actions are in

4  privity for purposes of *res judicata*.

5          The issues in both actions are whether defendant Cry interfered with plaintiff's right to

6  file grievance, and whether Cry's superiors sanctioned Cry's actions.  In filing both actions

7  plaintiff has sought essentially the same relief arising from essentially the same conduct.  *Res*

8  *judicata* bars all claims that were brought, *or could have been brought* in the prior action.  Here,

9  plaintiff could have filed a habeas petition that included all the defendants and all the facts

10 supporting recovery.  Allowing plaintiff to continue with the present action would defeat the

11 purposes behind the doctrine of *res judicata*.  Accordingly, the court recommends that this action

12 be dismissed.

13         **C.  Plaintiff's Pendent State Law Claim**

14         The court has recommended on two bases that the district court dismiss this case pursuant

15 to Fed. R. Civ. P. 56.  Based on the foregoing reasoning, the Court should exercise its discretion

16 to decline to exercise supplemental jurisdiction over plaintiff's state law claims.  28 U.S.C.

17 § 1367(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139) (1966);

18 *Schneider v. TRW, Inc.*, 938 F.3d 986, 993-94 (9th Cir.1991).

19         **D.  Plaintiff's Motions for Partial Summary Judgment, Sanctions and to Strike**

20         For the same reasons stated above, plaintiff's motion for partial summary judgment and

21 sanctions must be denied.  Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure

22 11 claiming that defendants falsely represented to the court that plaintiff's appeals are no longer

23 screened by defendant Cry.  However, defendants have produced evidence to substantiate that

24 allegation.  Plaintiff moves to strike what he characterizes as "inadmissible hearsay" from

25 defendants' opposition to plaintiff's motion for sanctions, filed October 17, 2006.  As the court is

26 denying each of plaintiff's motions for sanctions on the grounds that defendants are not in

1  violation of Fed. R. Civ. P. 11(b), including the motion at issue in the motion to strike, the court

2  denies plaintiff's motion to strike as moot.

3         Accordingly, IT IS HEREBY ORDERED that:

4         1.  Defendants' August 18, 2006, motion to vacate the pretrial cut-off dates is denied;

5         2.  Plaintiff's motions for sanctions dated September 21, 2006, October 3, 2006, and

6  November 30, 2006, are denied;

7         3.  Plaintiff's October 27, 2006, motion to strike is denied as moot;

8         Further, IT IS HEREBY RECOMMENDED that:

9         1.  Plaintiff's April 21, 2006, motion for partial summary judgment be denied;

10        2.  Defendants' June 13, 2006, motion for summary judgment be granted;

11        3.  Plaintiff's pendent state court claim be dismissed;

12        4.  Defendants' October 17, 2006, amended motion for summary judgment be denied as

13  untimely filed;

14        5.  Summary judgment be entered for defendants Cry, Ramirez-Palmer, and Valadez for

15  failure to state a claim upon which relief may be granted and on the basis of *res judicata*; and

16        6.  This action be dismissed.

17        These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22  shall be served and filed within ten days after service of the objections.  Failure to file objections

23  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

24  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

25  Dated:  July 19, 2007.

26
                                    EDMUND F. BRENNAN
                                    UNITED STATES MAGISTRATE JUDGE
                                              23