IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL J. BRODHEIM,

        Plaintiff,              No. 2:02-cv-0573 FCD KJN P

    vs.

MICHAEL CRY, et al.,

        Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff Michael Brodheim is a state prisoner at the California Medical Facility ("CMF") in Vacaville, California, proceeding with counsel in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Presently pending is defendants' motion to dismiss the operative Fourth Amended Complaint and this action in its entirety.  For the following reasons, the court recommends that defendants' motion be granted.[1]

I. <u>Introduction</u>

        This action proceeds on plaintiff's Fourth Amended Complaint ("FAC"), filed February 28, 2011 (Dkt. No. 227), and is before this court on remand from the Ninth Circuit Court of Appeals, for further proceedings consistent with that court's decision in <u>Brodheim v.</u>

---

[1]  This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Local General Order No. 262, and Local Rule 302(c).

Cry, 584 F.3d 1262 (9th Cir. 2009).  Defendants are Michael Cry (former CMF Inmate Appeals

Coordinator), K. Dickinson (current CMF Warden), and V. Singh (current CMF Chief Deputy

Warden).[2]  Defendants are sued in their official capacities only.  Plaintiff seeks only declaratory

and injunctive relief based on his claim of retaliation in the processing of his administrative

grievances, in alleged violation of the First Amendment to the United States Constitution, and

Article I, section 2, of the California Constitution, and based on his pendent state law claim that

defendants violated plaintiff's rights under the Bane Civil Rights Act, California Civil Code §

52.1.  Plaintiff does not seek damages.

Defendants move to dismiss this action on the following grounds:  (1) plaintiff's

retaliation claim against defendant Cry and his successors are moot; (2) plaintiff fails to state a

claim against defendants Dickinson and Singh; and (3) plaintiff fails to state a claim under the

Bane Civil Rights Act .  (Dkt. No. 227.)  Plaintiff timely filed an opposition to defendants'

motion (Dkt. No. 230), and defendants filed a reply (Dkt. No. 231).  A hearing on defendants'

motion was held before the undersigned on May 19, 2011.  Plaintiff was represented by attorney

Joseph Elford; defendants were represented by Assistant Attorney General Kelli Hammond.

II.  Background

Plaintiff alleges that on June 18, 2001, defendant Cry, then CMF Inmate Appeals

Coordinator, rejected an administrative grievance submitted by plaintiff on a CDCR Form 602.

On June 20, 2001, plaintiff returned the grievance and rejection notice to Cry, together with an

"Inmate Request for Interview," in which plaintiff set forth his objections to Cry's response.  On

June 21, 2001, Cry rejected plaintiff's request for an interview with a note stating that the

rejection would stand and the admonition, "I'd also like to warn you to be careful what you write,

request on this form."  (FAC, ¶¶ 10-12.)

---

[2] On October 7, 2010, this court substituted defendant Dickinson for former CMF Warden
Ramirez-Palmer, and defendant Singh for former CMF Chief Deputy Warden Valadez, pursuant
to Federal Rule of Civil Procedure 25(d)(1).  (Dkt. No. 218.)

1         Upon receiving Cry's "warning" on June 25, 2001, plaintiff filed a staff complaint

2   against Cry, in which he inquired why Cry had "warned" plaintiff, and requested that Cry stop

3   infringing on plaintiff's First Amendment right to seek redress of grievances.  (FAC, ¶ 13.)

4         The informal and first formal levels of review were bypassed.  (Dkt. No. 130-1 at

5   15.)  On July 23, 2001, the grievance was denied at the second level of review by former CMF

6   Chief Deputy Warden Valadez, on behalf of former CMF Warden Ramirez-Palmer.  (Id. at 16,

7   21-22.)  The Warden concluded that plaintiff had filed his complaint against Cry "as a form of

8   retaliation against CC II Cry," who had acted "within the scope of his duties as the Appeals

9   Coordinator."  (Id.; FAC, ¶ 14.)

10        On August 25, 2001, plaintiff submitted his staff complaint against Cry for third

11  (Director) level review, alleging that Cry's "warning" could only be construed as an attempt to

12  chill plaintiff's First Amendment right to file grievances.  (Dkt. No. 130-1 at 23-25.)  The

13  Director's Level Appeal Decision was rendered on November 20, 2011, and concluded that

14  plaintiff's complaint was "unsubstantiated."  (Id. at 28; FAC, ¶¶ 15, 16.)

15        Thereafter, "[o]n February 15, 2002, Brodheim was informed that defendant Cry

16  had inquired of another inmate whether Brodheim had written an administrative grievance on

17  behalf of one of CMF's disabled inmates.  Cry informed this other inmate that the handwriting on

18  the 602 looked like Brodheim's.  Brodheim wanted to file an administrative appeal alleging that

19  there was no legitimate reason for Cry's inquiry or comment, because inmates are expressly

20  permitted by regulation to assist other inmates in the preparation of an appeal.  Brodheim,

21  however, was deterred from [] filing another complaint against Cry by his earlier 'warning,' as

22  well as the warden's subsequent determination that Brodheim submitted his staff complaint

23  against Cry 'as a form of retaliation.'" (FAC, ¶ 17.)

24        The initial complaint filed in 2002 was dismissed with leave to amend (Dkt. No.

25  5), and plaintiff thereafter filed an amended complaint (Dkt. No. 6).  The court found that

26  plaintiff stated potentially cognizable claims against, inter alia, defendants Cry, Valadez, and

1    Ramirez-Palmer, and authorized the filing of a Second Amended Complaint on May 19, 2003

2    (Dkt. No. 19); then authorized the filing of a Third Amended Complaint and Supplemental

3    Pleading on September 22, 2004 (Dkt. No. 54).  Since September 9, 2005, this action has

4    proceeded only against defendants Cry, Valadez, and Ramirez-Palmer.  All other named

5    defendants were dismissed from this action.  (Dkt. Nos. 17, 20, 25, 42, 87, 90.)

6            On September 25, 2007, this court granted defendants' motion for summary

7    judgment on plaintiff's Third Amended Complaint and Supplemental Pleading.  (Dkt. Nos. 184,

8    189.)  By formal mandate issued December 17, 2009, the Ninth Circuit Court of Appeals

9    reversed the district court's decision, and remanded this case for further proceedings.  Brodheim

10   v. Cry, supra, 584 F.3d at 1274.  The Appeals Court reinstated plaintiff's First Amendment

11   retaliation claim under 42 U.S.C. § 1983, finding that plaintiff had produced sufficient evidence

12   to create a genuine issue of material fact whether Cry's warning constituted an adverse action.

13   Id., 584 F.3d at 1269-73.  The Ninth Circuit rejected the district court's alternative basis for

14   summary judgment, that plaintiff's claims were barred by the doctrine of res judicata based on a

15   separate state court action plaintiff had filed.  The decision reinstated plaintiff's state law claim

16   because not previously reached by the district court.

17           On remand, this court held a status conference and granted plaintiff leave to file a

18   motion to permit further amendment of his complaint.  (Dkt. No. 213.)  After considering

19   plaintiff's motion, and defendants' opposition thereto, the court concluded that it would be

20   "prudent to proceed conservatively on the operative pleadings, permitting only limited

21   supplemental pleading, and thereby maintaining the existing separation between plaintiff's

22   primary alleged facts and the alleged events occurring subsequent thereto."  (Dkt. No. 218 at 6-

23   7.)  This court reasoned that "[a]uthorizing the filing of only a supplemental pleading will cause

24   limited delay . . . and minimal costs, and cannot reasonably be construed as prejudicial to

25   defendants. Fed. R. Civ. P. 15(d)."  (Id. at 7.)  Pursuant to Federal Rule of Civil Procedure

26   25(d)(1), the court substituted the following supervisory defendants:  current CMF Warden K.

1    Dickinson was substituted for former CMF Warden Ana Ramirez-Palmer, and current CMF

2    Chief Deputy Warden V. Singh was substituted for former CMF Chief Deputy Warden J.

3    Valadez.  (Id. at 8.)  Plaintiff was granted leave to file "a Second Supplemental Pleading limited

4    to allegations of any additional events, relevant to plaintiff's presently existing claims, which

5    occurred subsequent to the filing of plaintiff's Third Amended and Supplemental Complaint."

6    (Id.)  Significant to the court was plaintiff's representation that he "intended to add 'no new

7    claims,' or 'change the scope of the trial,' but only 'provide evidence of a continuation of

8    [retaliatory] conduct by policy-making prison authorities,' that is, 'additional evidence of a

9    custom or policy' allegedly demonstrating 'retaliation by prison officials occurring since the last

10   complaint was filed.'" (Id. at 5 (fn. omitted), quoting plaintiff's brief set forth in Dkt. No. 216 at

11   1-2) (emphasis added.)

12         After plaintiff filed his Second Supplemental Pleading, defendants filed a motion

13   to dismiss (Dkt. No. 221), heard by this court on December 23, 2010.  At the hearing, plaintiff's

14   counsel conceded that plaintiff's contentions against defendant Cry "himself" were now moot,

15   but argued that this action should proceed against Cry's successors, as well as the current

16   Warden, who had allegedly "turned a blind eye" to continuing incidents of retaliation.  (Audio

17   Recording of Dec. 23, 2010 Hearing.)  Plaintiff's counsel stated that he didn't yet "have all the

18   facts" to challenge the conduct of Cry's successors, but believed that "there is at least one other

19   inmate who will state that he believes he was retaliated against for filing his grievances." (Id.)

20   Noting the length and history of this case, and the patchwork of operative pleadings, the court

21   granted plaintiff leave to file a single comprehensive pleading specifying all instances of alleged

22   retaliatory conduct that would warrant the requested injunctive relief in this action despite the

23   departure of each of the original defendants.  (Id.)  The court instructed plaintiff's counsel that

24   the allegations of the amended complaint must be specific in identifying the alleged ongoing

25   retaliatory conduct and its chilling effect on the exercise of plaintiff's First Amendment rights,

26   and any allegations of related conduct against other inmates, thus demonstrating that plaintiff's

1  retaliation claims are not now moot.  (Id.) (emphasis added.)

2          Accordingly, the court denied without prejudice the pending motion to dismiss,

3  and directed plaintiff to "file and serve a Fourth Amended Complaint, consistent with the

4  parameters set forth by the court on the record at the hearing." (Dkt. No. 225 at 1.)  Defendants

5  were directed to file an answer or a motion to dismiss.  (Id. at 2.)  In support of plaintiff's stated

6  need to obtain additional relevant facts, the court vacated the expired discovery deadline and

7  directed that "the parties may continue to conduct discovery until further order of this court."

8  (Id.)

9          Plaintiff filed the operative Fourth Amended Complaint on February 1, 2011.

10  (Dkt. No. 226.)  Significantly, the Fourth Amended Complaint is identical to plaintiff's Second

11  Supplemental Pleading, with one exception, the addition of Paragraph 22, which merely provides

12  in full: "At least two other inmates at CMF have been retaliated against by the appeals

13  coordinator for filing administrative grievances since 2008."  (FAC, ¶ 22.)   Thus, as now framed

14  by the Fourth Amended Complaint:

15          On or about January 20, 2004, Ramirez-Palmer's successor,
         [former] Warden Teresa Schwartz, prepared a memorandum to
16          Brodheim responding to letters Brodheim had written to public
         officials, seeking redress for Cry's inappropriate rejection of
17          Brodheim's grievances and staff complaints.  The memorandum
         criticized Brodheim for his protected activity as follows: "[Y]our
18          attempts to write numerous individuals, both inside and outside the
         Department, to garner support for your allegations, has led to
19          unnecessary staff time to respond to your multiple, duplicate
         complaints. . . . It is unfortunate that valuable staff time and energy
20          are directed towards the allegations you have made." (FAC, ¶ 18.)

21          Brodheim wanted to file an administrative grievance and tort claim
         against Cry, and amend the instant complaint, when he learned that
22          Cry sought to effectuate his transfer because of Brodheim's "focus
         on litigation," but he was deterred from doing so by Cry's previous
23          conduct.[3]  (FAC, ¶ 19.)

24  _____

     [3]   The Ninth Circuit more fully noted these allegations as follows:
25
     On June 8, 2004, Cry sent a memorandum to his supervisor, Associate Warden
26  Veal, "formally document[ing] a continued concern of harassment and fixation

1   On several occasions subsequent to the original filing of this
    complaint, defendant Cry rejected administrative grievances filed
2   by Brodheim without a legitimate basis for doing so, thereby
    further chilling the exercise of Brodheim's First Amendment
3   rights.  (FAC, ¶ 20.)

4   On November 19, 2008, another inmate at CMF, Gerald Simmons,
    submitted a declaration stating that he had been informed by
5   Correctional Officer L. Sanchez that the CMF administration
    wanted Brodheim removed from his position in the prison library
6   because Brodheim was engaged in litigation against a prison
    official.[4]  (FAC, ¶ 21.)
7
    At least two other inmates at CMF have been retaliated against by
8   the appeals coordinator for filing administrative grievances since
    2008.  (FAC, ¶ 22.)
9
    To date, no official at CMF, including Warden Dickinson, has
10  admitted that Cry's conduct violated Brodheim's First Amendment
    right to seek redress of grievances, thereby ratifying his conduct as
11  a policy at CMF.  (FAC, ¶ 23.)

12  If not enjoined by this Court, defendants will continue to violate
    the right of Brodheim and similarly situated inmates to seek redress
13  of grievances.  (FAC, ¶ 24.)

14          Defendants move to dismiss the Fourth Amended Complaint.  (Dkt. No. 227.)

15  Plaintiff has filed an opposition (Dkt. No. 230), and defendants filed a reply (Dkt. No. 231).  The

16

17  exhibited by Inmate Brodheim."  In the memorandum, Cry . . . noted that two
    inmates had informed him that Brodheim was "systematically inciting other
18  inmates and assisting them to file 602 complaints utilizing these same disruptive
    tactics." [¶ ]  Cry's memorandum concluded with a recommendation that
19  Brodheim be considered for a possible transfer out of CMF, noting a lack of
    restraining orders against Brodheim and generally questioning Brodheim's
20  "psychiatric override" designation, which is what led to his placement in CMF.
    Cry noted that Brodheim's "major problem" was "his attitude of superiority above
21  everyone else in levels of authority in CDC," and that he was "starting to make it
    difficult [for Cry] to perform [his] duties as the Appeals Coordinator." [¶ ]
22  In response to this memorandum, plaintiff was not transferred or disciplined.
    However, all appeals by Cry were subsequently assigned to the other Appeals
23  Coordinator at CMF, R. Piazza.

24  Brodheim v. Cry, 584 F.3d at 1266.

25          [4]  In a separate state court action, plaintiff sought reinstatement to his work assignment at
    the prison law library.  (See Dkt. No. 215, Exh. A, First Amended Complaint in Brodheim v.
26  Sanchez et al., Solano County Superior Court, Case No. FCS034441.)

1  court heard the parties' arguments on May 19, 2011.

2  III.  Discussion

3       A.  Legal Standards for Motion to Dismiss

4          Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to

5  dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

6  In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

7  court must accept as true the allegations of the complaint in question, Erickson v. Pardus,

8  551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff, Jenkins

9  v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th

10  Cir. 1999).  Still, to survive dismissal for failure to state a claim, even a pro se complaint must

11  contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the

12  elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).

13  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

14  conclusory statements do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

15  Furthermore, a claim upon which the court can grant relief must have facial plausibility.

16  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

17  content that allows the court to draw the reasonable inference that the defendant is liable for the

18  misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be

19  part of the complaint for purposes of a motion to dismiss for failure to state a claim.  Hal Roach

20  Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

21          A motion to dismiss for failure to state a claim should not be granted unless it

22  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which

23  would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

24       B.  Plaintiff Fails to State a Retaliation Claim Against Defendant Cry or His Successors

25          Plaintiff sues former CMF Inmate Appeals Coordinator Michael Cry "in his

26  official capacity only, so this suit is against the offices he previously occupied."  (FAC, ¶ 5.)

While conceding at the hearing that his specific claims and request for injunctive relief against Cry are now moot,[5] plaintiff asserts that his claims against Cry's successor(s) should survive the motion to dismiss because "First Amendment retaliation by the prison appeals coordinator at CMF continues." (Dkt. No. 230 at 3.)  Plaintiff directs the court's attention to the new allegation of his Fourth Amended Complaint that "[a]t least two other inmates at CMF have been retaliated against by the appeals coordinator for filing administrative grievances since 2008." (FAC, ¶ 22.)

Defendants contend that plaintiff's retaliation claims against Cry and his successors are entirely moot because Cry is no longer employed at CMF, and plaintiff's new allegation fails to assert that the alleged retaliatory conduct of Cry's successors has been directed against plaintiff.  Given the absence of any allegation that there exists a "live controversy between Brodheim and the current Appeals Coordinator at CMF" (Dkt. No. 231 at 1), defendants contend that plaintiff no longer asserts a viable retaliation claim.[6]

_____

[5]  The Fourth Amended Complaint identifies the following allegations against defendant Cry:  (1) On June 18, 2001, Cry rejected plaintiff's administrative grievance  (FAC, ¶ 10); (2) On June 21, 2001, Cry responded to plaintiff's request for an interview with a handwritten "warning" (id. at ¶ 12); (3) On February 15, 2002, another inmate informed plaintiff that Cry had inquired whether plaintiff had written an administrative grievance on behalf of a third inmate, which is a permissible activity; plaintiff alleges that he was "deterred from filing another complaint against Cry by his earlier 'warning,' as well as the warden's subsequent determination that Brodheim submitted his staff complaint against Cry 'as a form of retaliation'" (id. at ¶ 17); (4) On an unidentified date, when plaintiff learned that Cry "sought to effectuate his transfer," plaintiff was deterred from "fil[ing] an administrative grievance and tort claim against Cry, and amend[ing] the instant complaint" (id. at ¶ 19); and (5) "On several occasions subsequent to the original filing of this complaint, defendant Cry rejected administrative grievances filed by [plaintiff] without a legitimate basis for doing so, thereby further chilling the exercise of [plaintiff's] First Amendment rights" (id. at ¶ 20).  Plaintiff seeks an injunction proscribing future interference with, or retaliation for, the exercise of his First Amendment right to seek redress of grievances.

[6]  Defendants also contend, and plaintiff concedes, that plaintiff lacks standing to pursue the constitutional rights of other inmates.  Plaintiff asserts that his allegations concerning the rights of other inmates (see FAC, ¶¶ 1, 22, 24, and requested relief) reflect only that they may incidentally benefit should plaintiff prevail in this action.  It is clear that, absent class certification, plaintiff may challenge only the alleged violations of his own constitutional rights.  See e.g. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir.1994) ("an inmate cannot bring a denial-of-access claim on behalf of another inmate who is able to bring such a claim in his or her own name"); Reynoldson v. Shillinger, 907 F.2d 124, 125 (10th Cir. 1990) ("to the extent a complaint concerns 'inmates' rather than the plaintiff himself, it is dismissable for failure to allege the

1      "Within the prison context, a viable claim of First Amendment retaliation entails

2  five basic elements:  (1) An assertion that a state actor took some adverse action against an

3  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

4  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

5  legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

6      A prisoner's First Amendment retaliation claim seeking injunctive relief from a

7  defendant in his official capacity may continue against the defendant's successor in office.

8  "[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials

9  acting in violation of federal law."  Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004),

10  citing Ex parte Young, 209 U.S. 123 (1908).  "[U]nder the landmark decision in Ex parte Young,

11  a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform

12  their future conduct to the requirements of federal law, even though such an injunction may have

13  an ancillary effect on the state treasury."  Quern v. Jordan, 440 U.S. 332, 337 (1979) (citations

14  omitted).  An action against a public officer in his or her official capacity "does not abate" when

15  the officer ceases to hold office while the action is pending; rather, "[t]he officer's successor is

16  automatically substituted as a party."  Fed. R. Civ. P. 25(d); Hoptowit v. Spellman, 753 F.2d 779,

17  781-82 (9th Cir. 1985) (authorizing the continuation of a suit for injunctive relief against an

18  official's successor).

19      In Spomer v. Littleton, 414 U.S. 514 (1974), and Mayor of Philadelphia v.

20  Educational Equality League, 415 U.S. 605 (1974), the United States Supreme Court identified

21  the factors to be considered in assessing whether an action is moot against an official's successor.

22

23  plaintiff's standing to proceed" (citation omitted)); Newsom v. Norris, 888 F.2d 371, 381 (6th
Cir. 1989) ("a prisoner who initiates a civil action challenging certain conditions at a prison

24  facility in his individual capacity is limited to asserting alleged violations of his own
constitutional rights and, absent a request for class certification, lacks standing to assert the

25  constitutional rights of other prisoners"); Weaver v. Wilcox, 650 F2d 22, 27 (3rd Cir. 1981)
("[A]n inmate does not have standing to sue on behalf of his fellow prisoners.  Rather, the

26  prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional
rights." (Citations omitted.)).

1    Spomer was a civil rights class action for injunctive relief, alleging purposeful racial

2    discrimination by a former Alexander County State's Attorney (Berbling).  Pending the Court's

3    review of the Court of Appeals' decision relative to quasi-judicial immunity, Berbling's elected

4    successor (Spomer) was substituted in the action.  The Court vacated the judgment below and

5    remanded the case to the Court of Appeals to determine, in the first instance, whether the original

6    dispute was now moot and whether leave should be granted to amend the complaint to include

7    claims against the new State's Attorney.  The Court reasoned:

8                    [T]here is nothing in the record upon which we may firmly base a
                     conclusion that a concrete controversy between W. C. Spomer and
9                    the respondents is presented to this Court for resolution.  No
                     allegations in the complaint cited any conduct of W. C. Spomer as
10                   the basis for equitable or any other relief. . . .The wrongful conduct
                     charged in the complaint is personal to Berbling, despite the fact
11                   that he was also sued in his then capacity as State's Attorney.  No
                     charge is made in the complaint that the policy of the office of
12                   State's Attorney is to follow the intentional practices alleged, apart
                     from the allegation that Berbling, as the incumbent at the time, was
13                   then continuing the practices he had previously followed. . . .The
                     plain fact is that, on the record before us, respondents have never
14                   charged Spomer with anything and do not presently seek to enjoin
                     him from doing anything.  Under these circumstances, recognizing
15                   that there may no longer be a controversy between respondents and
                     any Alexander County State's Attorney concerning injunctive relief
16                   to be applied in futuro, we remand to the Court of Appeals for a
                     determination, in the first instance, of whether the former dispute
17                   regarding the availability of injunctive relief against the State's
                     Attorney is now moot and whether respondents will want to, and
18                   should be permitted to, amend their complaint to include claims for
                     relief against the petitioner.
19

20    Spomer v. Littleton, 414 U.S. at 521-22.

21            Similarly, the plaintiffs in Mayor of Philadelphia v. Educational Equality League,

22    supra, 415 U.S. 605, also a class action, challenged, on racial discrimination grounds, the

23    personal appointment policies of Philadelphia Mayor James Tate; however, Frank Rizzo became

24    Mayor while the case was pending before the Court of Appeals.  The Court of Appeals

25    nonetheless issued "extensive injunctive relief" and ordered the District Court to undertake

26    supervision of the new mayor's appointments.  The Supreme Court reversed the judgment of the

1  Court of Appeals, finding error in the "ordering [of] prospective injunctive relief against the new

2  Mayor in a case devoted exclusively to the personal appointment policies of his predecessor."

3  Mayor, 415 U.S. at 613.  Relying on Spomer, the Mayor court found:

> Where there have been prior patterns of discrimination by the
> occupant of a state executive office but an intervening change in
> administration, the issuance of prospective coercive relief against
> the successor to the office must rest, at a minimum, on
> supplemental findings of fact indicating that the new officer will
> continue the practices of his predecessor.

8  Mayor, 415 U.S. at 613 (emphasis added).

9      In contrast to Spomer and Mayor, plaintiff herein alleges that the conduct which

10  he challenges is ongoing.  (FAC, ¶ 22.)  However, plaintiff has nonetheless failed to allege a

11  cognizable First Amendment retaliation claim, either generally or against any successor to Cry.

12  The new allegation of the Fourth Amended Complaint that "the appeals coordinator" retaliated

13  against two inmates for filing administrative grievances (id.), fails to allege facts in support of

14  each element of a retaliation claim.  See Rhodes v. Robinson, supra, 408 F.3d at 567-68.

15  Specifically, the new allegation:  fails to identify the involved individuals; fails to identify the

16  alleged retaliatory ("adverse") actions; fails to explain how the alleged actions chilled the

17  inmates' further exercise of their First Amendment rights while failing to advance legitimate

18  correctional goals; fails to allege how the alleged incidents were similar to what occurred to

19  plaintiff; and fails to allege how what occurred to those individuals perpetuates a chilling of

20  plaintiff's First Amendment rights.  Id.  Nor does the new allegation identify the Appeals

21  Coordinator—the successor to Cry—who allegedly retaliated against these inmates.

22      Plaintiff was accorded ample opportunity to obtain this information.  When asked

23  by the court, at the May 19, 2011 hearing, to identify the challenged conduct referenced in

24  Paragraph 22 of the Fourth Amended Complaint, plaintiff's counsel responded:  "It's difficult for

25  me to explain . . . because of the difficulty I have communicating with my client, since he is

26  incarcerated. . . . My understanding is basically what it says here, that since 2008, we could come

1  forward with the names of two other inmates who have been retaliated against for filing

2  grievances by the current, or at least the Appeals Coordinator from 2008, who I believe is the

3  current Appeals Coordinator." (Audio Recording of May 19, 2011 Hearing.) Counsel offered to

4  obtain the names of these inmates, adding that one of the inmates had been transferred but "we

5  would have a hard time proving that another inmate was transferred because of his focus on

6  litigation; that would require more facts than we currently have. . . ." (Id.) The court explained

7  that obtaining such information had been the clear purpose of providing plaintiff, in December

8  2010, the opportunity to pursue additional discovery and to file a further amended and

9  comprehensive complaint.

10         As in Spomer, plaintiff herein has failed to allege a live controversy between

11  himself and Cry's current successor, and thus asserts no basis for awarding prospective injunctive

12  relief, the only remedy sought by plaintiff. However, in contrast to Spomer, plaintiff has already

13  been accorded the opportunity—with specific instructions by the court—to file an amended

14  complaint that contains a supported allegation that Cry's challenged conduct toward plaintiff has

15  been perpetuated by Cry's successors. As now framed, plaintiff's allegation of ongoing

16  retaliatory conduct by the "appeals coordinator" may or may not refer to CMF's current Appeals

17  Coordinator, fails to set forth the essential elements of a retaliation claim, fails to allege

18  retaliation against plaintiff, and fails to assert that the alleged retaliation against other inmates

19  bears any connection to plaintiff's original challenge against Cry. This court may not supply

20  missing elements in a deficiently-alleged claim. Associated General Contractors of California,

21  Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983) (it is improper for a

22  court to assume that "the [plaintiff] can prove facts which [he] has not alleged"). Rather, "for a

23  complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable

24  inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the

25  plaintiff to relief." Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009),

26  quoting Ashcroft v. Iqbal, supra, 129 S. Ct. at 1949. Moreover, a complaint must allege

1  sufficient facts to give defendants fair notice of the claim against them and the grounds upon

2  which such claim rests.  Bell Atlantic Corporation v. Twombly, supra, 550 U.S. at 555.

3            Plaintiff asserts nonetheless that his newly-alleged Paragraph 22 is sufficient to

4  demonstrate that "the continuation of the dispute" originating between plaintiff and Cry "is a

5  reasonable inference," quoting Hoptowit v. Spellman, supra, 753 F.2d at 782 (citation and

6  internal quotation marks omitted).  (Dkt. No. 230 at 4.)  Hoptowit is distinguishable.  Hoptowit

7  was a class action of present and future inmates at Washington State Penitentiary, seeking

8  constitutionally adequate conditions of confinement related to the physical structure of the prison

9  and the risks it posed to inmate health and safety.  On appeal after remand, the Ninth Circuit

10  Court of Appeals rejected defendants' contention that the district court had erred in issuing a

11  remand/injunctive order without first conducting a hearing to determine, inter alia, whether the

12  new administrators had continued the unconstitutional practices of their predecessors.  The Court

13  of Appeals noted that the successors of the named defendants were necessarily parties to the

14  action by reason of Federal Rule of Civil Procedure 25(d)(1).  However, distinguishing Spomer

15  and Mayor, the court noted that "most of the evidence does not relate to the personal conduct of

16  the principal named defendants," but rather to established "findings of fact concerning

17  institutional practices and physical conditions at the penitentiary . . . from which the continuation

18  of the dispute is a reasonable inference . . . and not merely idiosyncratic abuses of the particular

19  members of the outgoing administration."  Hoptowit, 753 F.2d at 782 (citations and internal

20  quotation marks omitted).

21            Unlike Hoptowit, a class action challenging the physical structure of a correctional

22  institution and related conditions of confinement impacting all of its prisoners, matters subject to

23  injunctive relief regardless of personnel changes, the instant case is premised on the personal

24  interactions between plaintiff and Cry, and therefore between plaintiff and Cry's successors.

25  This conclusion is underscored by the Ninth Circuit's narrow construction of plaintiff's original

26  ////

1    retaliation claim as premised on Cry's personal "warning" to plaintiff,[7] <u>Brodheim</u>, 584 F.3d at

2    1269-73, and by that court's finding that the "primary right" plaintiff pursued in this action was

3    "the actual alleged harm . . . inflicted by Cry himself when he placed the handwritten warning on

4    Brodheim's interview request form in 2001," <u>id.</u> at 1269.  The Ninth Circuit's focus on plaintiff's

5    specific allegations against Cry to assess the sufficiency of plaintiff's retaliation claim

6    underscores the personal nature of that claim, and supports this court's finding that, given Cry's

7    departure from CMF and the absence of a cognizable claim that plaintiff has suffered continuing

8    and ongoing retaliation by Cry's successors, plaintiff's retaliation claim is no longer viable.

9           "[W]here there is no reasonable expectation that the alleged violation will recur,

10   and where interim relief or events have completely and irrevocably eradicated the effects of the

11   alleged violation, the case is moot."  <u>America Cargo Transport, Inc. v. U.S.</u>, 625 F.3d 1176, 1179

12   (9th Cir. 2010), citing <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979) (internal

13   quotation and punctuation marks omitted).

14          C.  <u>Plaintiff Fails to State a Claim against Defendants Dickinson and Singh</u>

15          Defendants seek to dismiss plaintiff's claims against current CMF Warden

16   Dickinson, and current CMF Chief Deputy Warden Singh, for failure to state a claim.  To state a

17   claim for relief under Section 1983 based on a theory of supervisory liability, a plaintiff must

18   _____

19          [7] Assessing the five basic elements of a retaliation claim, as set forth in <u>Rhodes v.
     Robinson</u>, <u>supra</u>, 408 F.3d at 567-68, the Court of Appeals found that a genuine issue of material

20   fact existed whether Cry's written warning constituted an "adverse action."  The court concluded
     that it was the province of the trier of fact to determine "whether Cry's statement intimated that

21   some form of punishment or adverse action would follow a failure to comply," noting that
     "[t]here were a number of things that Cry, as a corrections officer, could have done;" and that

22   Cry's "transfer memo" sent to the Warden in 2004 "is circumstantial evidence that a jury could
     view as supporting [plaintiff's] contention the warning was a threat of transfer or disciplinary

23   action."  <u>Brodheim</u>, 584 F.3d at 1270-71.  The Court of Appeals concluded, however, that:  (1) it
     is "undisputed that [Cry's] warning was motivated by [plaintiff's] protected conduct," because

24   filing an administrative grievance and using disrespectful language therein are both protected
     activities, <u>id.</u> at 1271; (2) applying an objective standard, "[a] reasonable person may have been

25   chilled by Cry's warning," <u>id.;</u> and (3) Cry's warning advanced no legitimate penological
     interest, concluding that "Cry's warning of [plaintiff] cannot escape constitutional scrutiny by

26   citing a legitimate penological interest," <u>id.</u> at 1273.  Thus, the Ninth Circuit's analysis of each
     element of plaintiff's retaliation claim focused on Cry's specific written warning to plaintiff.

allege facts that the supervisory defendants (1) personally participated in the alleged deprivation

of constitutional rights, (2) knew of the violations and failed to prevent them, or (3) promulgated

or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional

rights and is the moving force of the constitutional violation." Hansen v. Black, 885 F.2d 642,

646 (9th Cir. 1989) (citations and internal quotations omitted); see also Taylor v. List, 880 F.2d

1040, 1045 (9th Cir. 1989).  Facts consistent with at least one of these scenarios must be

specifically alleged in order to state a potentially cognizable claim against a supervisory

defendant.

        The Fourth Amended Complaint sets forth the following allegations against the

former and current CMF Wardens and Chief Deputy Wardens:

> On July 23, 2001, prior defendant Ramirez-Palmer, then CMF's
> Warden, denied Brodheim's appeal at the second level of review.
> In her response, which was signed by defendant Valadez, the
> Warden concluded that Brodheim had submitted his 602 appeal "as
> a form of retaliation against CC II Cry" and that Cry had acted
> "within the scope of his duties as the Appeals Coordinator." (FAC,
> ¶ 14.)

> The Director's Level Appeal Decision was rendered on November
> 20, 2001.  This decision concluded that Brodheim's complaint was
> "unsubstantiated". . . . (FAC, ¶ 16.)

> . . . [Plaintiff ] . . . was deterred from filing another complaint
> against Cry by his earlier "warning," as well as the warden's
> subsequent determination that Brodheim submitted his staff
> complaint against Cry "as a form of retaliation." (FAC, ¶ 17.)

> On or about January 20, 2004, Ramirez-Palmer's successor,
> Warden Teresa Schwartz, prepared a memorandum to Brodheim
> responding to letters Brodheim had written to public officials,
> seeking redress for Cry's inappropriate rejection of Brodheim's
> grievances and staff complaints. The memorandum criticized
> Brodheim for his protected activity as follows:  "[Y]our attempts to
> write numerous individuals, both inside and outside the
> Department, to garner support for your allegations, has led to
> unnecessary staff time to respond to your multiple, duplicate
> complaints. . . . It is unfortunate that valuable staff time and energy
> are directed towards the allegations you have made."  (FAC, ¶ 18.)

> On November 19, 2008, another inmate at CMF, Gerald Simmons,
> submitted a declaration stating that he had been informed by

1
2
3
4
5
6
7
8

> Correctional Officer L. Sanchez that the CMF administration
> wanted Brodheim removed from his position in the prison library
> because Brodheim was engaged in litigation against a prison
> official.  (FAC, ¶ 21.)
>
> To date, no official at CMF, including Warden Dickinson, has
> admitted that Cry's conduct violated Brodheim's First Amendment
> right to seek redress of grievances, thereby ratifying his conduct as
> a policy at CMF.  (FAC, ¶ 23.)
>
> This conduct, as well as the ratification of this conduct by the other
> prison official defendants, have chilled, and continue to chill
> Brodheim's exercise of First Amendment rights and rights secured
> to him under the laws of the State of California.  (FAC, ¶ 27.)

9        Plaintiff contends that his "failure to admit" allegation against current Warden

10   Dickinson (FAC, ¶ 23), is sufficient to overcome defendants' motion to dismiss because it

11   alleges a causal connection between Dickinson's alleged ratification of Cry's challenged conduct

12   and a continuing policy of First Amendment retaliation at CMF.  Plaintiff relies on the Ninth

13   Circuit's decision in Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001), to assert that "[a] policy

14   or custom may be found . . . in the failure of an official to take any remedial steps after the

15   violations," and "[w]here the retaliatory acts are traceable to a custom or policy, . . . it is

16   unnecessary to demonstrate that the decision-making official directly ordered each act carried out

17   under his edict."  Id. at 1127 (citations and internal quotation marks omitted).  (Dkt. No. 230 at

18   5-6.)  Plaintiff asserts that this court should assume that Warden Dickinson is fully aware of

19   plaintiff's claims against Cry (because this litigation has proceeded during Dickinson's tenure as

20   CMF Warden, and resulted in a published Ninth Circuit decision), and that Dickinson has failed

21   to acknowledge that Cry violated plaintiff's First Amendment rights due to a policy at CMF of

22   ratifying First Amendment retaliatory conduct by Cry's successors.  (Id. at 6.)

23        Defendants respond that "[p]laintiff's sole claim against Defendant Dickinson is

24   that she has failed to admit that Cry's conduct violated Plaintiff's First Amendment right to seek

25   redress of grievances.  (FAC, ¶ 23.)  But the alleged retaliatory acts of Cry took place between

26   2001 and Cry's retirement in 2006, before Defendant Dickinson was the Warden at CMF.  There

1    are no allegations that Warden Dickinson knew Cry, or was aware of Cry's alleged misconduct.

2    The alleged conduct relates to the personal conduct of the previous Warden and Chief Deputy

3    Warden at CMF, and there are no allegations contained in the FAC that Defendants Dickinson

4    and Singh have condoned retaliatory conduct against Plaintiff, that the current Litigation

5    Coordinator ever retaliated against Plaintiff, or that the current Appeals Coordinator has a policy

6    of retaliating against Plaintiff for engaging in protected First Amendment activity.  [¶ ]  The

7    wrongful conduct charged in the complaint is personal to Cry, Ramirez-Palmer, and Valadez,

8    despite the fact that they were sued in their official capacities as Appeals Coordinator, Warden,

9    and Chief Deputy Warden respectively.  See Spomer, supra, 414 U.S. at 521.  There is nothing in

10   the record upon which to conclude that a controversy still exists between the Plaintiff and the

11   current prison officials.  Accordingly, the claims against Dickinson and Singh, as successors in

12   office to Ramirez-Palmer and Valadez, should be dismissed."  (Dkt. No. 227-1 at 8-9.)

13          The court finds defendants' argument persuasive, particularly in light of the

14   court's finding that plaintiff has failed to allege a cognizable claim of ongoing retaliation against

15   plaintiff by any of Cry's successors.  Plaintiff's "failure to admit" allegation against current

16   Warden Dickinson (FAC, ¶ 23) is entirely speculative; even assuming its truth, such an isolated

17   allegation would fail to demonstrate an actionable policy or practice.  "Liability for improper

18   custom may not be predicated on isolated or sporadic incidents; it must be founded upon

19   practices of sufficient duration, frequency and consistency that the conduct has become a

20   traditional method of carrying out policy."  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996)

21   (citations omitted); see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir.

22   1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or

23   isolated events are insufficient to establish custom.") (Citations omitted.)[8]  Additionally, plaintiff

24

_____

25          [8] Moreover, the Ninth Circuit declined to grant plaintiff summary judgment and
     remanded this matter for further proceedings because there were factual disputes concerning the
     interactions between Cry and plaintiff.  Brodheim v. Cry, 584 F.3d at 1274.  Thus, plaintiff's
26   argument against the current Warden is particularly weak based solely upon the assertion that the

1    makes no allegation against current Chief Deputy Warden Singh.  In addition, the several

2    allegations of plaintiff's Fourth Amended Complaint challenging the conduct of former

3    supervisory personnel—e.g., that former Warden Ramirez-Palmer's interim successor, former

4    Warden Schwartz, cautioned plaintiff in 2004 that it was "unfortunate" that his complaints were

5    requiring "valuable staff time and energy" (FAC, ¶ 18); that former Associate Warden Veal

6    received (but did not act upon) Cry's 2004 memorandum recommending plaintiff's transfer to

7    another prison (FAC, ¶ 19); and that, in 2008, "the CMF administration" sought to remove

8    plaintiff from his prison library job (FAC, ¶ 21) (the subject of a separate state court action by

9    plaintiff (see n. 5, supra))—also fail to allege an ongoing pattern or policy of retaliation against

10   plaintiff or any other inmate at CMF.

11           The court finds, therefore, that plaintiff has failed to a state a cognizable claim

12   against CMF Warden Dickinson or CMF Chief Deputy Warden Singh.  This finding requires the

13   dismissal of plaintiff's remaining federal claims.

14           D.  Court Declines to Exercise Supplemental Jurisdiction

15           Plaintiff alleges against all defendants a violation of California's Bane Civil

16   Rights Act, California Civil Code § 52.1.  (See FAC, ¶ 31 ("In doing the aforesaid acts,

17   defendants interfered with Brodheim's right to seek redress of grievances under the First

18   Amendment and article I, section 2 of the California Constitution through the use of threats,

19   intimidation, and/or coercion, in violation of California Civil Code § 52.1.").)[9]

20           Pursuant to this court's findings that plaintiff has failed to assert a viable federal

21   claim, the court invokes its discretion under 28 U.S.C. §1367(c)(3), to decline the exercise of

22   _____

23   Warden failed to essentially admit liability.

24           [9] The Bane Civil Rights Act provides a private right of action to individuals for conduct
25   that "interferes by threats, intimidation, or coercion, or attempts to interfere by threats,
     intimidation, or coercion, with the exercise or enjoyment by [such] individual or individuals of
26   rights secured by the Constitution or laws of the United States, or of the rights secured by the
     Constitution or laws of [California]."  Cal. Civ. Code § 52.1(a), (b) (emphasis added).

1  supplemental jurisdiction over this pendent state law claim.  Accord, Ove v. Gwinn, 264 F.3d

2  817, 826 (9th Cir. 2001) ("[a] court may decline to exercise supplemental jurisdiction over

3  related state-law claims once it has 'dismissed all claims over which it has original jurisdiction,'"

4  quoting 28 U.S.C. § 1367(c)(3) (citation omitted)).

5  IV.  Conclusion

6           For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

7           1.  Defendants' motion to dismiss plaintiff's Fourth Amended Complaint (Dkt.

8  No. 227), be granted; and

9           2.  This action be dismissed and judgment entered for defendants.

10          These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 21 days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

15  objections shall be filed and served within 14 days after service of the objections.  The parties are

16  advised that failure to file objections within the specified time may waive the right to appeal the

17  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED:  June 7, 2011

19

20                                              _Kendall J. Newman_____

21                                              KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE

22  brod0573.mtd.fin

23

24

25

26